**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | | |
|---|---|---|
| **FREDDIE CAMACHO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case  No. CV 12-02720  AJW** |
| | ) | |
| **v.** | ) | **MEMORANDUM OF DECISION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits.  The parties have filed a Joint Stipulation ("JS") setting forth their contentions.

**Administrative Proceedings**

The parties are familiar with the procedural facts. [See JS 2-4]. In a written hearing decision that constitutes the Commissioner's final decision in this case, an Administrative Law Judge (the "ALJ") found that plaintiff had severe degenerative disc disease of the lumbosacral spine with left lower extremity radiculopathy and did not have a severe mental impairment. [Administrative Record ("AR") 26].  The ALJ further found that plaintiff retained the residual functional capacity ("RFC") for a restricted range of light work, in that during an eight-hour work day, plaintiff could stand and walk for six hours and sit for six hours total, but could only sit for one hour at a time.  [AR 27].  Relying on the testimony of a vocational expert,

the ALJ determined that plaintiff's RFC precluded performance of his past work but did not preclude him from performing light, unskilled jobs available in significant numbers in the national economy. [AR 31]. Accordingly, the ALJ concluded that plaintiff was not disabled at any time through the date of her decision. [JS 3; AR 31-32].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r, Social Sec.Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Social Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

**Discussion**

Plaintiff contends that the ALJ failed properly to evaluate plaintiff's subjective symptom testimony. [See JS 4-24].[1]

During the administrative hearing, plaintiff testified as follows. He was 33 years old. He had only completed ninth or tenth grade, but he could read and write. [AR 48]. He stopped working in 2006 because he injured his back. [AR 49]. He was "in a lot of pain" in his low back and both legs. The pain originated in his left leg but had spread to both legs. His legs were "starting to give out, and it's going up to my neck now, where I get severe neck spasms." [AR 51]. He experienced pain all day and "especially at night." [AR

---

[1]   Plaintiff does not challenge the ALJ's step two finding that plaintiff has no severe mental impairment. His credibility argument concerns the ALJ's analysis of plaintiff's subjective complaints of pain and physical, not mental, functional limitations.

2

52]. He took Norco[2] as needed, up to six 10 milligram tablets daily, but no more because he did not want to damage his kidney or liver. [AR 58]. Plaintiff also took diazepam[3] and paroxetine[4] as needed for anxiety. [AR 58]. Plaintiff's pain medication was effective for about four hours and reduced his pain from nine or ten to about seven on a one-to-ten scale. [AR 52-53, 58]. He was prescribed home exercises and physical therapy, which provided some relief but did not eliminate the pain. [AR 53]. Plaintiff was awaiting approval for other treatments, such as water therapy. [AR 53-54]. He wore a back brace all the time. During a typical day, he could dress himself in sweats or loose clothing, but if the pain was bad, he needed assistance. [AR 54]. Plaintiff lived with his fiancé, who, he said, "helps me out a lot." [AR 54]. He tried to wash dishes and sweep, but could not do it for long because he got "real tired" and had pain. During the day, he watched television. He tried "not to lay down so much, because it makes it worse, so I walk around, sit down, lay down." [AR 54]. Plaintiff could visit friends or family, but he did not like to socialize. [AR 55].

Plaintiff said that he could stand for five to six minutes at a time for a total of 40 minutes in an eight hour workday, and sit for 10 minutes at a time before having to stand up or move around. [AR 55]. He experienced numbness and stinging in both legs. He had lost his balance, slipped, and fallen "a couple times already." [AR 56-57]. Plaintiff had been prescribed a cane by his doctor "a couple of years" before the hearing. [AR 56]. He "mainly used the back brace," and was wearing the brace during the hearing, but used the cane if he was going to walk "a long distance," something he usually did not do. [AR 56]. Plaintiff

---

[2]     Norco (a brand-name drug for hydrocodone bitartrate and acetaminophen) is a narcotic pain reliever that is used to relieve moderate to severe pain. See United States National Library of Medicine, DailyMed website, available at http://dailymed.nlm.nih.gov/dailymed/about.cfm (last accessed Jan. 8, 2013).

[3]     Diazepam (the generic form of Valium) is used to relieve anxiety, muscle spasms, and seizures and to control agitation caused by alcohol withdrawal. See United States National Library of Medicine and National Institutes of Health, MedlinePlus website, available at http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682047.html (last accessed Jan. 8, 2013).

[4]     Paroxetine (the generic form of Paxil) is a selective serotonin-reuptake inhibitor that is used to treat depression, panic disorder, social anxiety disorder, obsessive-compulsive disorder, generalized anxiety disorder, and post-traumatic stress disorder. See United States National Library of Medicine and National Institutes of Health, MedlinePlus website, available at http://www.nlm.nih.gov/medlineplus/druginfo/meds/a698032.html (last accessed Jan. 8, 2013).

1   considered a "long distance" to be "[m]aybe a block, or two blocks, three blocks." [AR 57].

2       Plaintiff described his lumbar spine pain as "severe," "stabbing," and "like a bunch of knots,

3   nerves[.]" [AR 57]. His neck felt "the same way, like a bunch of knots, just real bad," and it hurt to turn his

4   head from side to side or up and down. [AR 57-58]. Plaintiff was seeing an orthopedist, a pain management

5   specialist, a psychiatrist, and a therapist, who had been helping him "a little bit." [AR 59]. He experienced

6   panic attacks as a result of severe back pain that radiated into his neck, "to where my neck stiffened up, and

7   I couldn't even breathe, and I felt like I was going to have a heart attack." [AR 60]. Those symptoms had

8   prompted him to go to the emergency room "a couple of times," most recently about a year before the

9   hearing, resulting in his prescriptions for diazepam and paroxetine. [AR 59-60]. Plaintiff's doctor had

10  suggested that one of his discs might be pinching a nerve, precipitating the pain and anxiety, and was trying

11  to obtain authorization for an MRI. [AR 60]. Plaintiff's pain impaired his concentration and interrupted his

12  sleep during the night, and he napped "[j]ust about every day" as much as he could, "an hour here, an hour

13  there." [AR 61]. His doctors had recommended surgery, but plaintiff had told them he "would leave it as

14  a last resort" because he was "so scare of being paralyzed," and doctors "can't confirm that it's going to fix

15  me . . . ." [AR 61]. Plaintiff also had used a TENS unit and undergone electrical activity testing. [AR 62].

16      The ALJ summarized plaintiff's hearing testimony as follows:

17      At hearing, [plaintiff] testified in pertinent part that pain in his lower back spreads down to

18      his legs and up to his neck which he claims is difficult to turn from side to side. He describes

19      the pain in his lumbar spine as a stabbing sensation and further asserts that he has lost his

20      balance and fallen due to leg numbness bilaterally. He stated that he receives treatment,

21      including such medications as Norco, and Lorazepam, in connection with the workers'

22      compensation litigation he is pursuing for his work-related back injury. Claimant indicated

23      that his pain medications help for about two hours duration and, on a Wong-Baker scale of

24      1 to 10, he rates his pain as a 9 without medication and a 7 with it. He also said he wears a

25      back brace all the time and sometimes uses a cane prescribed by his doctor. His assessment

26      of his functional limitations is that within an 8 hour day, he can stand for about 5-6 minutes,

27      stand for a total of 40 minutes, and sit for about 10 minutes before having to stand up and

28      move around.

[AR 28].  The ALJ found that plaintiff's back impairment could reasonably be expected to cause his alleged symptoms, but that plaintiff's statements concerning their intensity, persistence, and limiting effects of his pain were not credible to the extent that they were inconsistent with the ALJ's RFC finding. [AR 28].

Once a disability claimant produces evidence of an underlying physical or mental impairment that is reasonably likely to be the source of her subjective symptoms, the adjudicator is required to consider all subjective testimony as to the severity of the symptoms.  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated).  Although the ALJ may then disregard the subjective testimony he considers not credible, he must provide specific, convincing reasons for doing so.  Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001); see also Moisa, 367 F.3d at 885 (stating that in the absence of evidence of malingering, an ALJ may not dismiss the subjective testimony of claimant without providing "clear and convincing reasons").  The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony."  Moisa, 367 F.3d at 885.  If the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

In evaluating subjective symptom testimony, the ALJ must consider "all of the evidence presented," including the following factors:  (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain and other symptoms; (3) precipitating and aggravating factors, such as movement, activity, and environmental conditions; (4) the type, dosage, effectiveness and adverse side effects of any pain medication; (5) treatment, other than medication, for relief of pain or other symptoms; (6) any other measures used by the claimant to relieve pain or other symptoms; and (7) other factors concerning the claimant's functional restrictions due to such symptoms.  See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); see also Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *3 (clarifying the Commissioner's policy regarding the evaluation of pain and other symptoms).  The ALJ also may employ "ordinary techniques of credibility evaluation," considering such factors as (8) the claimant's reputation for truthfulness; (9) inconsistencies within the claimant's testimony, or between the claimant's testimony and the claimant's conduct; (10) a lack of candor by the claimant regarding matters other than the claimant's

1  subjective symptoms; (11) the claimant's work record; and (12) information from physicians, relatives, or

2  friends concerning the nature, severity, and effect of the claimant's symptoms.  See Light v. Social Sec.

3  Admin., 119 F.3d 789, 792 (9th Cir. 1997); Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989).

4       Because there was no evidence of malingering, the ALJ was required to articulate specific, clear,

5  and convincing reasons to support her negative credibility finding.  The ALJ reasoned that plaintiff was not

6  completely credible because the "[o]bjective medical evidence does not fully support [plaintiff's]

7  complaints." [AR 28].  With respect to plaintiff's lumbar spine impairment, the medical evidence cited by

8  the ALJ was the opinion of Chester A. Hasday, M.D., an orthopedic surgeon who was the Agreed Medical

9  Examiner in plaintiff's workers' compensation case.  The ALJ noted that after reviewing plaintiff's

10  treatment records and conducting his own physical examination, Dr. Hasday diagnosed plaintiff with

11  chronic, recurrent musculoligamentous injury of the lumbosacral spine, degenerative lumbosacral disc

12  disease with objective left L5 radiculopathy, and opined that plaintiff should "avoid all heavy lifting greater

13  than 30-35 pounds and avoid repetitive bending, stooping or prolonged sitting activities." [AR 29].  The ALJ

14  credited Dr. Hasday's opinion and concluded that it was inconsistent with plaintiff's subjective allegations.

15  The ALJ said that she was not relying on the less restrictive functional assessment by Timothy Ross, M.D.,

16  a consultative orthopedist. [AR 29].

17       A lack of medical evidence corroborating the alleged severity of a claimant's subjective symptoms

18  is one reason the ALJ may consider, but it cannot form the sole basis for discounting pain testimony.  Burch,

19  400 F.3d at 681; Bunnell, 947 F.2d at 343, 345.  The ALJ said that "[t]here are other factors which do not

20  fully support [plaintiff's] complaints and render [his] assertions credible only to the extent consistent with"

21  the ALJ's RFC finding. [AR 29].  One factor she identified was that plaintiff's "activities of daily living

22  include attending to his own personal care needs, watching television, [and] alternating between sitting and

23  walking." [AR 29].

24       With respect to a claimant's daily activities, the Ninth Circuit has observed that "if a claimant 'is

25  able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical

26  functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to

27  discredit a claimant's allegations.'"  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (quoting

28  Morgan,169 F.3d at 600); Fair, 885 F.2d at 603 ("Many home activities are not easily transferable to ... the

more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."). The ALJ made no effort to explain how the mere ability to attend to self care and watch television qualified as activities that were transferable to a work setting or undermined the credibility of plaintiff's subjective pain complaints, particularly in view of the fact that plaintiff testified that he sometimes needed assistance getting dressed. [AR 54].

Furthermore, plaintiff's testimony about "alternating sitting and standing" did not undercut his subjective allegations of disabling pain. Plaintiff testified that during the day, he "walk[ed] around, s[at] down, lay down." [AR 54]. He also testified that he could stand for only five to six minutes at a time for a total of forty minutes per day, and sit for about ten minutes at a time before having to stand up and move around. [AR 28, 55].

In her hypothetical questions to the vocational expert, the ALJ posited an individual who, among other things, could sit for one hour at a time, for a total of six hours during an eight-hour day, and who *"must be able to alternate sitting and standing briefly every 30 minutes to one hour."*[5] [AR 68 (italics added)]. In other words, the ALJ implicitly rejected plaintiff's subjective testimony about the extent to which he needed to change positions during the day. Contrary to the ALJ's reasoning in her decision, nothing in plaintiff's testimony about "alternating between sitting and walking" undermined his credibility or justified rejecting his subjective testimony as to the nature and extent of his need to alternate positions. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) ("Only if the level of activity were inconsistent with [the claimant's] claimed limitations would these activities have any bearing on [the claimant's] credibility."). Any error in the ALJ's assessment plaintiff's credibility on that point is not harmless because the need to alternate between sitting and standing is a vocationally significant nonexertional limitation,

---

[5]     The ALJ did not include the need to alternate sitting and standing in her formal RFC finding, which specified only that plaintiff was limited to sitting one hour at a time. However, since the ALJ also found that plaintiff could stand and walk for at least six hours in an eight-hour work day, the ALJ implicitly found that plaintiff would need to change from a sitting position to standing or walking after sitting for one hour. Moreover, the ALJ clearly relied on the vocational expert's testimony in response to the hypothetical question that specified a need to alternate positions "briefly every 30 minutes to one hour." [AR 27, 68].

especially for the unskilled work base.[6]  See  SSR 83-12, 1983 WL 31253, at *4 (noting that the need to alternate periods of sitting and standing precludes  "doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work," and adding that "[u]nskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will").

The ALJ also asserted that plaintiff's "course of treatment" and "work history" were factors that supported her credibility finding [AR 30], but neither of those factors is a convincing reason for doubting the veracity of plaintiff's subjective complaints of pain and physical functional limitations.  The ALJ noted that plaintiff did not undergo cognitive psychotherapy, stress-reduction bio-feedback, or group therapy, as recommended by his treating psychiatrist. [AR 30].  Plaintiff's unexplained failure to undergo a prescribed course of psychiatric treatment was a legitimate reason for rejecting the alleged severity of plaintiff's subjective mental symptoms.  See Bunnell, 947 F.2d at 346 (stating that the "unexplained, or inadequately explained failure to seek treatment or follow a prescribed course of treatment" is relevant in assessing the credibility of subjective testimony). However, the ALJ did not point to any inconsistency between plaintiff's subjective complaints of back pain and limitation and his course of treatment for that condition, which included receiving treatment from Dr. Kropf, his orthopedist, and Dr. Nini, his pain management specialist; obtaining prescriptions for narcotic painkillers, including Norco; using a back brace "all the time"; using a prescribed cane at times; participating in physical therapy; performing home exercises; using  a TENS unit; and considering the possibility of surgery, albeit as a "last resort." [See AR 28, 52-62, 163-311, 385-537].

The ALJ also failed to explain how plaintiff's "work history" was inconsistent with his subjective pain complaints or otherwise detracted from his credibility. [See AR 28].  A claimant's prior work record and efforts to work may be considered in assessing credibility. See 20 C.F.R. §§ 416.929(a), (c)(3); SSR 96-7p, 1996 WL 374186, at *5.  An ALJ may consider a claimant's poor work history in making a negative credibility determination. See  Thomas, 278 F.3d at 958-959 (holding that the ALJ permissibly found the

---

[6]    All of the alternative jobs identified in the ALJ's decision were unskilled. [See AR 31, 67].

claimant not credible in part because she had an "extremely poor work history" and had "shown little propensity to work in her lifetime"); Albidrez v. Astrue, 504 F. Supp. 2d 814, 821-822 (C.D. Cal. 2007) (holding that the ALJ's negative credibility finding was supported by his observation that the claimant "has never worked, which raises some questions as to whether his current unemployment is truly the result of his medical problems"). On the other hand, a "good work history may be deemed probative of credibility . . . ." Schaal v. Apfel, 134 F.3d 496, 502 (2d Cir. 1998).

Plaintiff testified that he had worked full-time as a warehouseman from some time in 1995 until he stopped working due to work-related back injury in October 2006. His job duties included driving a forklift, unloading, and restocking items ranging in weight from 20 to 160 pounds. [AR 48-49]. Prior to that job, plaintiff worked part-time in a restaurant as a "bar back"; he said that he held both jobs simultaneously for about two years. [AR 48-51; see AR 138-145, 164]. Plaintiff's social security earnings record shows that he was continuously employed from 1994, the year he turned 18, until his alleged onset of disability in October 2006. [JS 13; see AR 126]. The ALJ failed to explain how plaintiff's work history supported her negative credibility finding. In view of the undisputed evidence that plaintiff had worked steadily at one, or sometimes two, jobs from 1994 until his alleged onset of approximately 12 years later, plaintiff's work history did not detract from the credibility of his subjective complaints..

Therefore, the ALJ did not articulate legally sufficient reasons for rejecting the alleged severity of plaintiff's subjective complaints of pain and physical functional limitations.

**Remedy**

In general, the choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.) (holding that the district court's decision whether to remand for further proceedings or payment of benefits is discretionary and is subject to review for abuse of discretion), cert. denied, 531 U.S. 1038 (2000). The Ninth Circuit has observed that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Moisa, 367 F.3d at 886 (quoting INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam)). A district court, however,

should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for

rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (citing Harman, 211 F.3d at 1178). The Harman test "does not obscure the more general rule that the decision whether to remand for further proceedings turns upon the likely utility of such proceedings."  Harman, 211 F.3d at 1179; see Benecke, 379 F.3d at 593 (noting that a remand for further administrative proceedings is appropriate "if enhancement of the record would be useful").

The ALJ did not provide legally sufficient reasons for rejecting the alleged severity of plaintiff's subjective testimony regarding his pain and physical functional limitations.  If plaintiff's subjective testimony about his pain and physical functional limitations were credited in full, his RFC would be even more restricted than that of the hypothetical person described in his representative's questions to the vocational expert, who testified that no jobs were available for such a person. [See AR 65, 70-71].

The court has "some flexibility" in crediting as true evidence rejected for insufficient reasons.  See Vasquez v. Astrue, 572 F.3d 586, 594 (9th Cir. 2009); Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003). However, the factors that may justify declining to credit improperly rejected testimony as true are not present in this case.  The record is fully developed, it is clear that the ALJ would be required to find plaintiff disabled if his subjective pain testimony were credited as true, and there is no reason to conclude that the ALJ could marshal sufficient evidence on remand to support her negative credibility finding with respect to the period under adjudication.  Rodriguez v. Bowen, 876 F.2d 759, 763 (9th Cir.1989) ("[W]e generally award benefits when . . . the record has been fully developed and there is not sufficient evidence to support the ALJ's conclusion."); cf. Bunnell v. Barnhart, 336 F.3d 1112, 1115-1116 (9th Cir. 2003) (remanding for further administrative proceedings where the ALJ did not properly reject the claimant's subjective complaints and lay witness testimony but several "outstanding issues" remain to be resolved, including  whether the ALJ "must credit [the] testimony as true" and whether, according to a vocational expert, there was alternative work the claimant could perform with all of the limitations supported by the record).

The Commissioner attempts to fill in some gaps in the ALJ's reasoning by pointing to evidence that

plaintiff's reported daily activities were somewhat less restricted than the ALJ suggested and included caring for his dog, driving a car, and "yard work" (that is, sweeping and watering the grass). [JS 134; AR 133-134]. Defendant also argues that the ALJ was not required to discuss the evidence regarding plaintiff's work history. [JS 20].

The Commissioner's arguments cannot remedy the defects in the ALJ's decision because this court is required "to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray v. Comm'r, Soc. Sec. Admin., 554 F.3d 1219, 1225 (9th Cir. 2009). Moreover, the Commissioner's argument that the ALJ should be given a chance to rely on record evidence unfavorable to plaintiff that she failed to discuss while defending her failure to discuss record evidence favorable to plaintiff suggests that the Commissioner is "asking for an unwarranted second bite at the apple." Johnson v. Astrue, 2012 WL 786737, at *17, * (D.Or. Feb. 17, 2012) (crediting improperly rejected evidence as true and remanding for the payment of benefits where the record was fully developed), report and recommendation adopted, 2012 WL 786950 (D.Or. Mar. 9, 2012).

Crediting plaintiff's subjective pain testimony as true in this case and awarding benefits is consistent with "the purpose of the credit-as-true rule," which is "to discourage ALJs from reaching a conclusion about a claimant's status first, and then attempting to justify it by ignoring any evidence in the record that suggests an opposite result." Vasquez, 572 F.3d at 594. "By requiring the ALJ to specify any factors discrediting a claimant at the first opportunity, the rule ensures that pain testimony is carefully assessed, and helps prevent unnecessary duplication in the administrative process." Vasquez, 572 F.3d at 594.

<strong>Conclusion</strong>

The Commissioner's decision is **reversed**, and the case is **remanded** for an award of benefits consistent with this memorandum of decision.

**IT IS SO ORDERED.**

January 14, 2013

_____
ANDREW J. WISTRICH
United States Magistrate Judge